The next case this morning is 5 22 0 1 1 5 people versus Davis arguing for the defendant. Appellant is Abigail Elmer, arguing for the state. Appellee is Catherine Snitzer. Each side will have 10 minutes for the argument. The account will also have five minutes for rebuttal. Please don't order. The clerk is permitted to record these proceedings. Good morning, Council. First of all, thank you for your patience with us today. Our last couple cases very involved, and we had a lot of questions may maybe the hottest bench I've seen since I've been on the court with the question. So, uh, I don't know if you'll get peppered like the other councils did, but be prepared. Uh, with all that, Miss Elmer, go right ahead. Thank you. Good morning, Your Honors. My name is Abigail Elmer and I represent Lamont Davis. There are three issues in this case. The first whether the court improper improperly allowed other crimes evidence to be admitted through J. J. P. S. Testimony. The second whether Lamont 106 year sentence was excessive and third whether the trial court improperly ordered sentences to run consecutive to focus on my first point, which is that J. J. P. S. Testimony should not have been admitted at trial. It was unrelated and irrelevant and served only to sway the feelings of the jury. The case against Lamont Davis at trial should have hinged on a single week identification made by Jalil Jones based on a fleeting opportunity to view the defenders. But instead, the court allowed the jury to hear testimony by J. J. P. That muddied the waters for the jury, including testimony about an event where Lamont was not even present. J. J. P. The younger brother of Justin Dubar is and Jalil Jones. The victims in this case was not at their shooting. He did not live in their home. Um, but he was still allowed to testify to two previous incidents that he had encountered. The first was a month before the shooting, when he was confronted in a park by Martez Johnson, Carlos Jones and a third person that at the time he was not able to ID as Lamont Davis and did not ideas Lamont Davis until trial. Let me stop it for real quick. You're reciting all the facts that you're already in your brief. We all know the facts get to your argument as to why those things are not proper or the court didn't do anything by let me ask you just one preface on this. The two the two other alleged shooters, um, were both of those in this. I couldn't find this in the record anywhere. Were both of those individuals charged and convicted as well? Or was it just Lamont that was charged? Your Honor, only Lamont Davis was charged in this case. There is no evidence in the record as to who the other two shooters were. Um, moving into the bulk of my argument. Um, this testimony by J. J. P. Did not go to proving motive as the court at trial held that it did. There was no evidence of a connection between the incidents J. J. P. Testified to and the shooting of his brothers. Um, J. J. P. Did not live in the home where his brothers were shot. He was not present at the time, and the intruders did not ask for him when they came to the home. Um, this showed only that J. J. P. Was upset about the park and escalated to an incident at school, but it did not show that Lamont was upset or looking to retaliate. At most, it showed that Lamont knew Martez and Carlos, but there was no evidence as your honor asked about that these two boys were connected to the shooting in any way. The second event at the school did not even include Lamont, and there's no many assumptions must be made to create any relevance between the events and to create a motive. It must be assumed that J. J. P. Was right and that it was Lamont who, um, who, uh, he had the incident within the park that Lamont was upset about that incident, that he was upset about the incident at school, even though he wasn't there. And as far as the record reflects, Martez was not expelled as J. J. P. Was that he wanted that Lamont went in revenge, even though he was the initial aggressor in the park incident that Lamont knew who J. J. P. Even was that he knew who his brothers were, that he knew where his brothers lived, that J. J. P. Often hung out at that home, and it assumes that Lamont went there to find J. J. P. Or get revenge when the intruder did not even ask for J. J. P. At the shooting. These air all the assumptions that must be made to make make any relevance, um, for J. J. P. S. Testimony to show a was shown throughout J. J. P. S. Testimony. These assumptions are not borne out by the evidence, and J. J. P. S. Testimony thus did not establish motive. It also did not go to his testimony also did not go to the identity of the intruder, which is another reason the court found that his testimony was relevant. Um, courts have upheld other crimes testimony to show the identity of, um, the defendant where a witness it a witness's ability to identify the defendant relied on that evidence or the physical evidence connects both the cases. But here, J. J. P. S. Testimony does not show how Julia would have been able to identify Lamont. J. J. P. J. J. P. Didn't even recognize Lamont in the park, and Julia didn't recognize Lamont after the unfortunately did not survive the shooting and thus did not identify his intruders. And there was no evidence that Julia ever saw these photos and would have been able to identify Lamont because of them. At the time of the shooting, Julia only gave a physical description of his shooter as wearing a puffy blue jacket with a hoodie. He didn't say that his shooter is Lamont. He didn't say his shooter was the person who jumped his brother in the recognized from those Facebook photos. How did Julia get to the point where he was able? How did they eventually identify Lamont? Wasn't there a Facebook post that was that Julia looked at while in the hospital? Who sent that? Was that his brother? Or was that his girlfriend? I believe that was it was, I believe, a video from his girlfriend that he eventually, yes, identified in the, um, in the hospital afterwards. But the connection between that video that she sent to Jalil or showed Jalil, um, and J. J. P. Uh, you know, his his Facebook search, if you will. No, Your Honor. These were unrelated. Um, Facebook posts. They were two different Facebook posts. Um, but the one that was shown to JJ to Jalil in the hospital afterwards, my recollection has no, um, no relation to the photos J. J. P. Sent to his brother, Justin. Okay. Um, as this evidence, um, is not admissible for identity purpose and as it did not show Julia was and it did not show Julia was able to identify Lamont. Um, how Julia was able to identify Lamont as required. Finally, the court held that this evidence was relevant as it was a continuing narrative of events. But for evidence to be admissible, other crimes evidence to be admissible for that purpose. Um, it must not involve separate, distinct or disconnected crimes, which these were here. Um, the park incident and the incident at school were separate and distinct. The park took place a full month before the shooting and the incident at school took place a full two weeks before the shooting. Um, and at the school Lamont was not even there and there's no evidence he was mentioned spoken about at all at, um, that incident in its brief. The state says that J. J. P. Knew Lamont and knew of J. J. And that Lamont knew of J. J. P.'s brothers and knew he was often at their apartment. And that's how this establishes a continuing narrative of events. But again, these are all assumptions that were not born out in the testimony and are not reasonable inferences. All of the relevance of these of J. J. P.'s testimony is based on assumptions that this court would have to find, um, in order to make it relevant. These are not connected cases. And because and without, um, this error is not harmless because without this testimony by J. J. P. Um, there is only very weak evidence connecting Lamont Davis to this crime. There was no DNA evidence connecting Lamont Davis to the shooting. There were no fingerprints connecting him. Jalil was the only eyewitness. He only saw his intruder for a few seconds before running out without looking back. No evidence of motive other than this testimony or that Justin and Jalil knew Lamont at all. He could not. Jalil at the time of the shooting could not identify Lamont. A gun was never recovered. Lamont made no inculpatory statements and has J. J. P.'s testimony was the only connection. And again, it rested only on assumptions. It muddied the waters and it led did corroboration for Jalil's identification of Lamont. Without this testimony, the jury would have been left to consider only whether Jalil was able to accurately identify one of the offenders after viewing him for only a very few chaotic seconds with a gun in his face. So because J. J. P.'s testimony is not relevant to motive to not a part of a continuing narrative of events. Um, we ask that this court reverse and remand for a new trial. Thank you. Are you suggesting, though, that the fact that, you know, if we take is accurate, the Jalil, uh, only only I would only, uh, observation of the defendant was when the defendant allegedly held a gun in Jalil's face that that the defendants that that incident, including Jalil's face and features that that I'm sorry that the defendant's face and features wouldn't be seared into Jalil's mind when a gun is in his face. He was able to describe with some accuracy what he was wearing, what he looked like, his dreads and so forth and so on. Um, seems like he had ample time to identify give identifying characteristics of his assailant. Your Honor, the description he gave of the color of his jacket, his hoodie, the dreads is while probably an accurate description of his intruder, also an and additionally, while this was obviously an incredibly traumatic moment for Jalil, it was also a very fast encounter. Um, he understandably saw a gun in his face and turned around and ran. Um, he only had seconds to really. He wrestled with the assailant's gun. So it wasn't just see the gun turn and flee. He tried to disarm him. And until one of the co defendants or co assailants, I should say, came up behind him with a gun. And then he was standing in the you know, he's backing away. My understanding of the evidence, he's backing away facing all three assailants. And until one of them said, just go ahead and cap him or something like that. So he had ample opportunity while he's backing away to look at all three of them. And then once he heard that somebody was about to pull the trigger on him, he turned and ran. It seems like there's more opportunity than what you're alluding to for him to view all of the assailants, but especially the one who had the gun in his face. Yes, Your Honor. I don't know that that detracts from your argument that the J. J. P. S. Testimony was not necessary or or wasn't present prejudicial. I'm just suggesting that I think I think Jalil had ample opportunity to identify at least some of these assailants. Your Honor, I'm not disputing that is what happened. That is his testimony of how the interaction was laid out. But he also testified that that was an incredibly short amount of time. He and he understandably was probably focused on the gun at the time. And so even though a gun was pointed at him, he backed up for a little bit before he turned around and ran out the apartment. It was still he testified, I believe, was an incredibly short period of time. And this evidence that came in of J. J. P.'s bolstered this relatively weak identification, given the chaotic nature of what Jalil was going through at the time. Okay, thank you. Thank you. I will ask if I know it's the other sentencing issues have been fully briefed. But before we move on, I would ask if Justice Vaughn or Justice Barberis had any questions from Miss Elmer regarding those sentencing issues. I did not. Neither do I. Okay, well, obviously, Miss Elmer, you'll have your time for your rebuttal. Miss Snitzer, go right ahead. Court, counsel, my name is Assistant Attorney General Katherine Snitzer on behalf of the people. As opposing counsel did all focus on the evidentiary issue, unless the court has questions about the sentencing issues. The trial court does not abuse its discretion in this case in admitting J. J. P.'s testimony. And I think it's important to focus on the standard of review here, which is that this court should only reverse the trial court's decision if it's arbitrary, fanciful, unreasonable, or if no reasonable man would adopt the view of the trial court. And that's simply not the case here. Other crimes evidence is admissible if it's relevant for a of the defendant. And here, there were three different bases that the trial court found this evidence to be admissible. The first, of course, is the continuing narrative, which is evidence is admissible where it gives context, it sets the stage for later events. There's no requirement that the earlier events take place on the same day. It just it has to give context and explain the later events. How remote in time were the events that J. J. P. testified? He said it was when he was 15 years old. How far, how long ago was that? You mean between the testimony and the events or between the events and the... Between the two events. Between the two events, it's about a month for the first the incident at the park. And then there's a later incident in school, which is less than a month before. The shooting, so it's not a matter of months or years, it's a relatively short amount of time. And we do cite a case, Johnson, where evidence of an earlier shooting 11 days prior to to the charge defense was admissible. So I don't think it has to be on the same day. It just needs to there needs to be a connection that explains later events. And here, the connection between the victim, the victim's family member, J. J. P., and the defendant in this case and his friends, it goes to show that there's a continuing pattern of interactions between defendant and his friends and J. J. P. There's also testimony from both Jalil and J. J. P. that it was well known to other students at J. J. P.'s high school that J. J. P. was often at this apartment and that there were drugs at this apartment. So all of this goes to set the stage for these events. In the cases you cite, though, the Johnson case and the other cases you cite, doesn't that relate more to motivation for actual retaliation? Here, there's no assertion that this is retaliation. J. J. P. is not even involved in the second shooting. They're totally unrelated incidents, correct? I don't think it's fair to say that they're specific evidence of anyone saying it's a motive, but I do think we can infer that because of this ongoing tension and not only the incident at the park, but then the later fight at school, that there is animosity between the victim's brother and defendant and defendant's friends. So that does create, I mean, and it goes both to the continuing narrative and to the motive. And I think the other thing is that the continuing narrative cases focus on is that they can explain what might otherwise be confusing or inexplicable to the jury. And here, it explains the reason they targeted this particular apartment and attacked these two men who they, for no apparent reason. And so it just, it gives context. It shows a history of I'd also like to address some of defendant's contention that the identity evidence has to, that the identifying witness has to be aware of prior crimes. That's not consistent with the cases that we cite, Johnson and Carta, where a defendant's participation in other crimes can be used to connect, to show a connection between defendant and the other aggressors or to a group and to bolster an identification in that way. However, even if we believe this evidence is also harmless because of the weight of the other evidence in this case, it's not just JJP's identification. It's also defendant initially lied to police about his identification was quite strong. He identified the defendant as the aggressor several times. He explained why he got a good chance to look at the defendant. He explained that he was able to see him in the bright light, in bright lighting, that they were close face to face. They were close. He was able to view his face closely. And he also accurately described what defendant was wearing. And that is exactly what defendant's wearing a few days later when he's arrested by police. JJP's testimony is also consistent with all of the forensics and the video surveillance footage from across the street. And JJP's testimony, he's also, he's very clear about what he can't remember. So there's other details that he's asked about where he says he can't remember, but he explains why he can remember JJP's face. So this is a strong identification and so any error in admitting this evidence was harmless. I'd also note that the prosecution didn't rely heavily on this evidence. It was introduced to give this context, but it's not mentioned in opening or closing. The prosecution's main focus here was JJP's identification and the other evidence directly related to this crime. And the court gave a clear limiting instruction saying that this evidence is only admitted for the limited purpose of a continuing narrative motive or identification. So to the extent that opposing counsel doesn't believe that the connection is close enough, that there wasn't enough evidence to support the connection, that goes to the weight that the jury should give this evidence. It doesn't mean that it can't be admitted. The jury is allowed to consider this evidence and to give it the weight that's appropriate to make whatever inferences are appropriate from this evidence, but it's not, but reweighing the persuasiveness of this evidence is not the task here. Finally, going to the probative value of this evidence, it doesn't, it very much outweighs the prejudice because it doesn't, it's a single incident. It doesn't, the defendants involved in a later incident that his friend is involved in, it doesn't show bad character in the way that a long string of prior offenses might, or a particularly inflammatory crime such as a gang offense or a sexual offense or something like that might inflame the passions of the jury. Here it's a single event and it's considerably less egregious than the crimes that defendant is charged with in this case. It's hard to imagine that the jury is going to see a fight in the park and say, oh, well, then he must be a bad person and therefore guilty of these murders, or excuse me, murder and aggravated battery. The comparison between the two cases, the other crimes evidence and the actual charges, I think is also important here. So if there are no other questions, then we would ask you to, on this issue or on the sentencing issue, then we would ask that this court affirm both the sentence and the conviction. Thank you, counsel. Justice Vaughn, Justice Barbera, same question. Any questions for Ms. Snitzer, especially sentencing that we didn't get to today? No, thank you. Justice Vaughn, you're muted, but I take that was a note. Yeah, no questions. I'm sorry. That's all right. Thank you. Ms. Elmer, go right ahead. Thank you, your honor. I quickly want to just discuss the two cases, Johnson and Carta, that opposing counsel cites for the identification exception to bring in other crimes evidence. In these cases, again, the evidence goes to a direct link between the victim and the defendant in that case. Here, JJP's testimony does not show a link between Lamont and the shooting of Justin and Jaleel. It does not even show they know each other. And the link between these situations is, again, based completely on assumptions. There is just no evidence that Lamont was upset about either incident, that he was looking for revenge. The second incident didn't even involve him. It involved Martez Johnson, who there is no evidence that he told Lamont about this or that Martez was involved at all in the shooting. With the rest of my time, I would really like to focus on the prejudice that this testimony brought into this trial. The description that Jaleel gave of the intruder was of someone in a puffy bubble, blue jacket. I believe he said there was a hood and dreadlocks. This blue jacket, this is an incredibly common description of someone and could apply to many people, not just Lamont Davis. The opposing counsel also mentions the video that was consistent with Jaleel's testimony from when Jaleel ran out of the apartment that was caught by nearby surveillance cameras. On this video, three men are seen coming to the apartment, but it is not seen who those people are. No one ever testified that Lamont Davis could be identified from these surveillance cameras. It does not go to Lamont's guilt here. Finally, this evidence does inflame the passion of the jury. It gives an incident in the past where Lamont was shown with a gun committing assault against JJP in a park with a gun. It shows his propensity to have a gun, to use a gun. It gives the jury the impression that this is a crime he has the propensity to commit. It especially bolsters Jaleel's identification, which is based on a relatively short period of time where a gun was pointed in his face and where he then ran and did not look back. He did not have an incredibly long period of time to look at his intruders and was focused on surviving the encounter. This is incredibly important where there was no DNA evidence connecting Lamont, no fingerprints, no other eyewitnesses. There was no ID given at the time by Jaleel until later and a gun wasn't recovered. Because of this prejudice, because of the propensity evidence and that this evidence was more prejudicial than probative, we ask that this court remand for a new trial. Thank you. Well, thank you, counsel. Last time, Justice Barberis, Justice Vaughn, do you have any questions? No questions. Thank you. None. Thank you. Well, thank you, counsel. Obviously, we will take the matter under advisement. We will issue an order in due course.